# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                          Case No. 06-CR-292

**ARMANDO GARCIA,**

        **Defendant.**

## RECOMMENDATION TO CHIEF JUDGE RUDOLPH T. RANDA REGARDING THE DEFENDANT'S MOTION TO SUPPRESS

On November 2, 2006 Armando Garcia ("Garcia") was charged in a criminal complaint with possessing with intent to distribute more than 500 grams of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and possessing a firearm during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Sections 2 and 924(c)(1)(A)(i). On November 02, 2006, the grand jury returned a two count indictment reflecting the charges in the complaint.

On November 29, 2006 Garcia filed a motion to suppress evidence seized from his residence on the basis that the search warrant was not supported by probable cause and the warrant was so deficient that no reasonable police officer could have relied upon the warrant.

### ANALYSIS

**Probable Cause**

On October 30, 2006, Milwaukee Police Detective David Baker ("Detective Baker") presented an affidavit to a Milwaukee County Court Commissioner and obtained a warrant to

search an apartment belonging to the defendant in the 5500 block of West Lincoln Avenue in the City of West Allis. Detective Baker's affidavit is based, in large part, upon information that Detective Baker learned from a confidential informant ("CI"). Detective Baker states that the CI was inside the target residence within the last seventy-two hours and observed "an off white powdery substance packaged in a plastic bag in the living area of the house." The affidavit continues to state that the CI knew that this substance was cocaine because the CI had been involved in the sale of "controlled substances" in the past. Detective Baker states that he believes that this CI is credible because information from the CI led to the arrest of "more than two fugitives" and the arrest and conviction of one other person in relation to drug trafficking. The CI also provided Detective Baker and other law enforcement officers with information concerning drug trafficking that the officers were able to verify.

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754, 755-756 (7th Cir. 2003) (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)). Probable cause is a fluid concept, United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990), determined by the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." McNeese, 901 F.2d at 592; Gates, 462 U.S. at 238 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995).

> Where information from an informant is used to establish probable cause, courts should assess the informant's credibility by considering the following factors: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and

application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005) (citing United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002); United States v. Jones, 208 F.3d 603, 609 (7th Cir. 2000)). "None of these factors is determinative; . . . 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." Peck, 317 F.3d at 756 (quoting United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999)).

Upon quick review, the facts in the affidavit are quite simple—within the last three days a CI saw what he believed to be cocaine inside the defendant's apartment. The affidavit also contains information that the informant has proven truthful and reliable in the past in that information from the informant has previously led to the arrest and conviction of an individual for drug trafficking. Additionally, the informant has given law enforcement information relating to drug trafficking that law enforcement has been able to verify. The affidavit also states that the informant was able to identify the substance as cocaine based upon his prior experience in the sale of controlled substances. Further, the informant was able to provide information regarding the description of the target residence.

However, it is only when the affidavit is subjected to greater scrutiny that numerous questions arise. First, the description of the residence is preceded by the following statement: "That affiant knows from personal observation and from affiant's conservation [sic] with the above mentioned informant that . . . ." Thus, it is unclear what portion of the description is based upon the informant's information or the affiant's observations or to what extent, if at all, the affiant verified the information received from the informant. Thus, it is possible that no verification took place and the affiant's personal observations consisted of a single minor detail of the residence's description.

3

Alternatively, it is possible that the informant was able to provide only the barest details and the information in the affidavit came from Detective Baker.

Next, the affidavit contains absolutely no other substantive facts regarding the probability that cocaine is likely to be found in the defendant's apartment. Certain facts that a judicial officer would expect to see in such an affidavit are absent. For example, there is no reference to the quantity of the cocaine. The quantity of controlled substance observed is particularly relevant when significant time has elapsed between the observation and the application for the warrant. See Owens v. United States, 387 F.3d 607, 608 (7th Cir. 2004). All that is said is that the suspected cocaine was "packaged in a plastic bag." Thus, it is possible that the CI observed anywhere from a few grams to a few thousand grams given that most any quantity of cocaine could be "packaged in a plastic bag."

Furthermore, there is no indication as to why the cocaine was in the apartment. Certainly possession of any amount of cocaine is a crime justifying law enforcement obtaining a search warrant, but facts relating to the probable reason that the cocaine was in the apartment and the quantity of the cocaine would have significant relevance to the issue of whether the cocaine was likely to remain in the apartment three days after the CI's observations. See id. If it was a small quantity and for personal use, it would be unlikely that the cocaine would still remain three days later. However, if it was a large quantity or there was information to believe that cocaine present because cocaine was being regularly distributed from the residence, it is substantially more likely that cocaine would be found three days after the CI's observations.

The suspected purpose for which the cocaine was in the apartments is also relevant to why the CI's identity cannot be disclosed, the scope of the search, and the objects to be seized. In paragraph ten, the affiant explains that disclosure of the CI's identity would be dangerous to the CI "because of the drug dealers [sic] obvious desires to keep their activities secret." In paragraph eleven, the affiant states that in his training and experience, persons engaged in drug trafficking

4

secreted in any number of places within the residence. In paragraph thirteen, the affiant discusses how drug dealers tend to use scales, tinfoil packets, plastic bags, cutting agents, and other items to aid in the packaging and distribution of controlled substances. However, all these references to the habits of drug dealers are irrelevant because there are absolutely no facts to indicate that drug dealing was occurring at the target residence.

Now, the court turns to the specific factors that a court must consider when determining whether a CI's information is presented to establish probable cause. As for the first factor, the affidavit states that the CI personally observed a substance he suspected to be cocaine in the residence. Notwithstanding, all the other factors indicate that the CI's information was insufficient to constitute probable cause. The CI's statements, as explained above, contain only the barest detail. There is no indication that the police corroborated any of the CI's information relating to whether or not cocaine could be expected to be found in the apartment at the time of the search. As many as three days passed between the CI's observations and the application for the search warrant. Certainly, three days is a sufficient amount of time for significant amounts of cocaine to be consumed or moved. Also, as explained above, it is unclear whether the police corroborated the CI's description of the building and the exterior of the apartment. Although the affidavit does contain information to indicate that the informant has been proven to be truthful and reliable in the past, there is no statement as to the when this information was provided. It is possible that it has been years since the informant has provided reliable information to law enforcement.

Having evaluated these factors, and for the reasons stated previously, this court is unable to say that the warrant was supported by probable cause. Although the affidavit does contain information to indicate that the CI was proven to be reliable in the past, information from any CI will naturally be subject to additional scrutiny by a judicial officer. See United States v. Peck, 317 F.3d 754, 758 (7th Cir. 2003) ("[M]ost CIs have a bias against the defendant or something to gain

5
Case 2:06-cr-00292-RTR   Filed 12/21/06   Page 5 of 13   Document 14

from their statement."). Without even the barest of additional details, this court cannot say that a CI simply stating that he saw what he believed to be an unspecified quantity of cocaine in a residence is sufficient to constitute probable cause, particularly when that information may be up to three-days old. Therefore, for the reasons stated above, it is the opinion of this court that the search warrant was not supported by probable cause. Thus, the evidence seized should be suppressed unless the good faith exception, set forth in United States v. Leon, 468 U.S. 897 (1984), applies.

**Leon Good Faith Exception**

If a police officer could have reasonably relied upon the search warrant, then evidence seized pursuant to the warrant shall not be suppressed simply because the search warrant was later determined to be defective. Id. at 922. "If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002). A police officer's decision to seek a warrant is prima facie evidence of good faith. United States v. Harju, 466 F.3d 602, 607 (7th Cir. 2006); United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir. 2004); Koerth, 312 F.3d at 868. Thus, the burden falls upon the defendant to rebut this prima facie case. Harju, 466 F.3d at 607.

Although Garcia argues that the issuing court commissioner was misled and abandoned his judicial role, these arguments are merely challenges to the probable cause in the warrant that he ineffectively attempts to rephrase into arguments to defeat the officer's good faith reliance. What Garcia seems to be arguing is that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Harju, 466 F.3d at 607 (quoting Leon, 468 U.S. at 923). Similarly, a defendant may defeat a police officer's good faith if "courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand." Id. (quoting Koerth, 312

6

F.3d at 869). Garcia does not argue that reliance was unreasonable because a materially similar affidavit was held invalid under indistinguishable facts, and thus Garcia's challenge rests upon the argument that the affidavit was so deficient in probable cause that reliance was unreasonable.

Because the test is an objective one, it is not necessary that this court conduct an evidentiary hearing to determine whether the particular officers involved in the execution in the warrant at issue in this case did, in fact, rely upon it. The question is whether a reasonable and well-trained police officer would have believed that this warrant was valid. See Leon, 468 U.S. at 922 n.3; see also, United States v. Dickerson, 975 F.2d 1245, 1250 (7th Cir. 1992).

Police officers are not expected to be trained as lawyers and are not required review search warrants with the scrutiny demanded from a judicial officer. "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination." Harju, 466 F.3d at 606; see also, Illinois v. Krull, 480 U.S. 340, 349 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."); Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). However, "[p]olice officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles," United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002) (quoting United States v. Brown, 832 F.2d 991, 995 (7th Cir. 1989)), and therefore cannot blindly rely upon a search warrant simply because it bears the signature of a judge.

In Owens v. United States, 387 F.3d 607 (7th Cir. 2004), an inmate petitioned for relief under 28 U.S.C. § 2255 on the basis that his attorney was ineffective in his failure to obtain the

suppression of certain evidence that was seized pursuant to a warrant. As explained in the court of appeals' decision, the only basis for probable cause set forth in the "barebones" affidavit was that three months earlier an informant purchased "a quantity of crack" from the defendant. Id. at 608. There was no information as to the quantity of crack or the reliability of the informant. Id. The court quickly determined that the affidavit did not set forth probable cause and that no reasonable police officer could believe that the warrant was based upon probable cause. Id.

However, in another recent case that this court regards as analogous, the Seventh Circuit held that the good faith exception to the exclusionary rule should apply despite a lack of probable cause in the warrant. In United States v. Peck, 317 F.3d. 754 (7th Cir. 2003), a confidential informant contacted a deputy sheriff and told the deputy that she was upset with the defendant because he was not paying for diapers for their child. Id. at 755. She then said that she thought he should be arrested because he was dealing drugs. Id. She said she had been inside the defendant's residence within the past two days and the defendant showed her large amounts of two substances that the defendant said were marijuana and cocaine. Id. The defendant further told the informant that he intended to sell these items. Id. The informant was able to identify these items through her "personal experiences." Id. Because the informant had not been proven truthful and reliable in the past, she appeared before a judge who placed her under oath and she swore her statements were true. Id. The judge then issued the warrant. Id.

The court held that although it was "bare bones," the warrant was not so lacking in probable cause to be facially deficient. Id. at 757. The court explained that this was because the affidavit contained information that the defendant possessed and planned to sell drugs. Additionally, concerns regarding the informant's credibility and veracity were addressed by having the informant appear before the issuing judicial officer. Id. at 757-58. Based upon these facts, the officers could reasonably rely upon the warrant.

8

In many ways, the present case may be seen as falling on the factual spectrum somewhere between Owens on the side of suppression and Peck on the side of good faith. Owens, Peck, and the present case, all involve bare bones affidavits. This court believes that the affidavit at issue in the present case is unlike Peck and similar to the affidavit in Owens in that the present affidavit contains no information indicating the quantity of suspected cocaine observed by the informant.

Unlike Owens, the present affidavit addresses the reliability of the informant and thus, in this regard is similar to the facts of Peck. Even so, the present affidavit fails to indicate the currency of the informant's reliability. Time is also a factor in all three cases. Undoubtedly, the three months that elapsed between the informant's observation and the application for the warrant factored heavily into the court's conclusion in Owens that a reasonable police officer could not rely on the warrant. In Peck, only two days had passed. The present case involves three days, and thus, in regards to time, the present case is substantially closer to Peck than Owens. However, time is a substantially more significant factor in the present case because, unlike Peck, the present affidavit contains no information as to the quantity of cocaine observed in the apartment, or the purpose for which it was there. Thus, in the present case, it was possible that the informant observed only a small amount of cocaine intended for personal use, and thus it would be unlikely that the cocaine observed would remain three days later. As also discussed earlier, personal use cocaine totally contradicts any inference of drug trafficking.

Thus, although not as deficient as the affidavit in Owens, the affidavit in the present case was substantially more deficient than that discussed in Peck, and therefore leads this court to the conclusion that a reasonable police officer could not have believed that the warrant was supported by probable cause.

This court is mindful that the exclusionary rule should be applied only as a last resort when it is necessary to deter unlawful police conduct. See Hudson v. Michigan, 126 S. Ct. 2159, 2163

9

(2006); Harju, 466 F.3d at 605 (quoting United States v. Janis, 428 U.S. 433, 446 (1976)). In the present case, this court believes that suppression is absolutely necessary to hopefully reform what appears to be a long-standing practice of the Milwaukee Police Department to obtain search warrants based upon the barest modicum of probable cause.

The real culprit in this case is the standardized form affidavit utilized by the detective. Instead of treating each case on an individual basis, the affiant first ascertains the nature of the information received and then uses the standardized form best fitting the situation. In this case, the informant observed controlled substances on the premises to be searched, so the detective used this form, the first page of which is titled "AFFIDAVIT FOR SEARCH WARRANT (Form to be Used When Reliable Informant Observed Controlled Substances on Premises)." The form then contains standard, or boilerplate language, first to identify the affiant, then to describe the affiant's experience, then to show why the informant is credible, and finally, it discusses specific probable cause, in this case, what was observed by the informant.

For example, the form contains numerous underlined portions that are preceded by parenthetical explanations of what is to be inserted in the underlined spaces (e.g. "[Informant] personally observed an off white powdery substance packaged in a plastic bag in the living area of the house; that informant knows that this was     cocaine      because (Explain Reason for Reliability of Informant's Knowledge that Substance is Controlled Substance)  source has been involved in the sale of controlled substances in the past and knows from personal experience that the off white powdery substance was cocaine; ")

The court surmises that such a form was developed in order to establish a uniform approach in obtaining search warrants. While uniformity may be desired under certain circumstances, to establish probable cause, the court must be governed by the totality of the particular circumstances. In that regard, uniformity is not an ally. In fact, as demonstrated by the court's discussion regarding

10

the existence of probable cause, here uniformity resulted in a deficient warrant. The problem with using this type of form is that the affiant only sets forth the facts necessary to complete the blanks. Thus, in the example cited above, the affiant indicates only what the informant has seen, but nowhere is he able to describe the circumstances under which such an observation was made, i.e. as part of a drug trafficking operation or simply the target using cocaine. The former inference is what generated the issuance of the search warrant, while the latter would have resulted in rejection. Further, while the fill-in-the-blank approach should not have precluded the affiant from describing the amount of the cocaine, crucial in this court's analysis, the form itself did not ask for, or encourage, such disclosure.

Additionally, the generalized nature of the form is problematical. For example, paragraph four of the affidavit explains the definition of a "controlled buy." However, within the context of this form, such information is surplusage in that there is absolutely no indication that a controlled buy occurred in this case. In fact, there are no blanks spaces in the form wherein a description of a controlled buy, if one occurred, could be inserted. The inclusion of this surplusage certainly has the potential of misleading a reviewing judicial officer. If a judicial officer believes that a controlled buy occurred when one had not, it is possible that he or she may inappropriately issue a warrant on the mistaken belief that the police possess additional probable cause than they in fact do. Although there is no indication that such potential deception was the intent, or that it even occurred, this court wonders what other possible purpose this paragraph could serve, given that there does not appear to be a space on the form in which the affiant could provide the details of a controlled buy.

As noted earlier, the language of the form creates an uncertainty in reference to the description of the residence; it is unclear whether it was provided by the detective or the informant or some sort of joint effort. The form fails to permit the affiant to include facts that would be of assistance in ascertaining the reliability of the informant. As discussed earlier, the fact that the

11

informant has provided information which resulted in the arrest of fugitives or resulted in the arrest of a drug trafficker loses significance unless it is of recent vintage.

There are obvious indications that this standardized form was drafted quickly and without much care. The form is riddled with typos (e.g. "lead" instead of "led;" "intelligent" instead of "intelligence;" "conservation;" instead of "conversation;" "premise" instead of "premises"). Although it is reasonable that an error may occasionally escape even the most careful eyes, since this is a standardized form, how many police officers, court commissioners, judges, and prosecutors over the years have reviewed it, but yet permitted these errors to persist? The problems of the form are so glaring that it is difficult to imagine that this court is the first one to recognize the form's defects. This court is concerned that the persistence of these errors may be indicative of the care with which these affidavits are reviewed and consequently, the lack of safeguards present in the process that ultimately results in the invasion of the sanctity of a person's home.

The court uses the phrase "over the years," because in the bottom right corner of each page is the notation "(Revised 7/8/96)." Thus, it appears that for at least the last decade the Milwaukee Police Department has utilized this defective form to obtain search warrants when a controlled substance has been observed on the premises. The possibility that obtaining warrants with this form may have been the standard practice of the Milwaukee Police Department for more than a decade may indicate that it was reasonable for Detective Baker and the officers who executed this warrant to believe that they had obtained a valid warrant. However, the subjective beliefs of the specific officers involved is irrelevant because the <u>Leon</u> standard is one of objective reasonableness.

In the opinion of this court, this deficient standardized affidavit form has no place in federal prosecutions. Having said that, the court recognizes that by use of computers, an affiant could utilize a standardized approach, or "cut and paste" from prior affidavits and this practice may be difficult to decipher. Nevertheless, as long as the affidavit demonstrates that the individual

circumstances are fully presented, instead of a "fill-in-the-blanks" approach, this court has no problem. Under such circumstances, the affidavit itself will demonstrate that probable cause is based on the attendant circumstances and not on boilerplate.

As stated in this recommendation, it is clear that this court has concluded that not only is probable cause woefully lacking, but the doctrine of good faith should not be applied. This court is also hopeful, that if this recommendation is adopted by the district judge, local law enforcement will be effectively on notice that the time has come to substantially revise or abandon this form. Additionally, given that the use of a bare bones or boilerplate affidavit is a factor regularly considered by courts to indicate that it was unreasonable for a police officer to reasonably rely upon the warrant once a court determines the warrant was not supported by probable cause, see, e.g., Peck, 317 F.3d at 757, the Milwaukee Police Department may want to reconsider whether a "fill-in-the-blanks" form is appropriate to use as an affidavit in support of a search warrant.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress be **granted**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin this 21st day of December, 2006.

                                                  s/AARON E. GOODSTEIN
                                                  U.S. Magistrate Judge

13
Case 2:06-cr-00292-RTR   Filed 12/21/06   Page 13 of 13   Document 14