# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

**v.**                                                   **Case No. 06-CR-292**

**ARMANDO GARCIA,**

           **Defendant.**

# DECISION AND ORDER

A grand jury returned a two count indictment charging Armando Garcia ("Garcia") with possession with intent to distribute more than 500 grams of cocaine, and with possession of a firearm during and in relation to a drug trafficking crime. On November 29, 2006, Garcia filed a motion to suppress certain evidence seized from his residence. The magistrate judge recommended that this Court grant the motion to suppress. The government filed a timely objection to the magistrate's recommendation.[1]

On October 30, 2006, Milwaukee County Court Commissioner Barry Slagle issued a search warrant based entirely on an affidavit that Milwaukee Police Detective David Baker ("Detective Baker") provided. According to Detective Baker's affidavit, a

---

[1] The National Day of Mourning in observation of the death of former President Gerald Ford is a legal holiday and is not counted for purposes of calculating the deadline for filing an objection under Federal Rule of Criminal Procedure 45. *See Darby v. Potter*, 2005 WL 840466, at *2 (E.D. La. April 7, 2005). Therefore, Garcia's objection that the government failed to timely file its response is of no avail.

confidential informant was inside Garcia's residence and, within seventy-two hours beforehand, had observed "an off white powdery substance packaged in a plastic bag in the living area of the house." Based on the informant's past involvement in the sale of cocaine, the informant believed the white substance was cocaine. Furthermore, according to the affidavit, Detective Baker believed that the informant was credible because the informant had provided information in the past that led to the arrest of "more than two fugitives" and information that led to the arrest and conviction of one other person in relation to drug trafficking. In addition, the informant also provided information concerning drug trafficking in the Milwaukee area that Detective Baker was able to confirm. Based on this affidavit, Commissioner Slagle believed that there was probable cause to support a search warrant, and issued same.

The magistrate judge concluded that not only was the warrant issued without probable cause, but the affidavit that Detective Baker presented to Commissioner Slagle was so lacking in indicia of probable cause that no reasonable officer could have believed that the warrant was properly issued. The "good faith" exception, therefore, did not apply. The Court disagrees with the recommendation of the magistrate.

First, the Court finds that the personal observation (by a reliable informant) of the commission of a crime (thus linking a crime to the place to be searched) within a relatively short time prior to the issuance of the warrant (at maximum 72 hours), coupled with the officer's own professional judgment as to what could be concluded from these

2

circumstances, support a finding of probable cause for the issuance of a search warrant. While there wasn't direct corroboration of the informant's statements, the totality of the circumstances viewed from a practical rather than a technical perspective suggests a finding of probable cause.

Even if the Court presumes that the warrant was issued without probable cause, Garcia has failed to meet his burden of demonstrating that the good-faith exception of *United States v. Leon,* 468 U.S. 897 (1984), should not apply here.

*Leon* held, of course, that evidence seized pursuant to a subsequently invalidated search warrant need not be suppressed if the officers relied in good faith on the judge's issuance of the warrant. *Leon*, 468 U.S. at 924. An officer's decision to obtain a warrant is *prima facie* evidence that he acted in good faith. *Id*. at 920. Furthermore, when an officer relies on a duly authorized warrant, he is relying on a "judicial mandate . . . to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *Id*. at 921 n. 21 (citation omitted). Given that the purpose of the exclusionary rule is to prevent police misconduct, evidence obtained pursuant to a search warrant will rarely be excluded. *Id*. at 922. It is the magistrate's responsibility, and not the officer's, to determine whether there is probable cause to justify a search, and thus "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." *Id*. at 921.

3

However, if the warrant was based on an affidavit "so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable," evidence discovered pursuant to a search warrant will be excluded. *Id.* at 923. The analysis under this exception is similar to that used in cases involving the affirmative defense of qualified immunity. *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002). That is to say, the Court will not exclude the evidence unless the defendant establishes either, (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that are indistinguishable from those presented in the case at hand, or (2) the affidavit is so "plainly deficient" that any reasonably well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). Garcia fails to show either one. To begin, he does not attempt to rely on a case with facts indistinguishable from this one, so the Court can only suppress the evidence if he demonstrates that the affidavit was "plainly deficient."[2]

This burden is not met. Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *See*

---

[2] The Court agrees with the magistrate judge's characterization of Garcia's argument. While Garcia argues that Commissioner Slagle abandoned his judicial role, what he seems to be arguing with regard to the *Leon* good-faith exception is that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

4

*United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000). The Supreme Court has refused to define probable cause, saying that whether it has been established varies on the facts of each case. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996). Instead, the Supreme Court adopted a "totality of the circumstances" test, which includes a consideration of the veracity of the informant. *See Illinois v. Gates*, 462 U.S. 213, 230-39 (1983). In addition, each assertion of an affidavit is not required, standing alone, to meet a finding of probable cause. Each is assessed in connection with every other assertion in the affidavit to determine if probable cause exists. *(See United States v. Claude Wiley*, No. 05-2596, __F. 3d __, 2007 WL 332988, *5-6, 7th Cir. Feb. 6, 2007.) While there certainly are deficiencies in Detective Baker's affidavit, it was not "plainly deficient," *in toto*, and therefore supported a finding of probable cause.

       The Court starts with *United States v. Peck*, 317 F.3d 754 (7th Cir. 2003). In *Peck*, the search warrant was issued entirely on the basis of an affidavit which in turn relied solely on information provided by a confidential informant. The informant, who had never worked with the police, alleged that she saw the defendant in possession of an unspecified "large" amount of crack cocaine and marijuana two days earlier. In addition, the informant said she was the defendant's girlfriend, and wanted the defendant arrested because the defendant was not paying for their child's diapers. Because the informant had never previously given information to the police, she appeared before a judge and signed the affidavit.

5

While the affidavit did not provide enough to establish probable cause for the issuance of the search warrant, the officers acted in good faith in obtaining it. *Peck*, 317 F.3d at 757. While the warrant was based on a "bare bones" affidavit, it was not so lacking as to make it facially deficient. *Id*. The officers acted in good faith even though the informant provided minimal statements alleging that the defendant possessed and planned to sell drugs. While the officers addressed the question of her veracity by having her appear and sign an affidavit in front of a judge, the affidavit in the present case is stronger. Unlike the informant in *Peck*, Detective Baker's informant had demonstrated his reliability in the past by providing information that led to the arrest of at least three other individuals. Also, unlike the informant in *Peck*, there was no reason to question the bias of Detective Baker's informant. The informant here had no personal reason for wanting Garcia arrested. Furthermore, the informant in *Peck* never explained how she recognized the substances as crack cocaine and marijuana, other than her unspecified "personal experience." In the instant case, the informant explained that he had been involved in the sale of cocaine in the past, which allowed him to identify the substance he saw in Garcia's residence as cocaine.

The informant in *Peck* did describe a "large" amount of drugs in the defendant's possession. Here the informant gave no indication of the amount of cocaine that was in Garcia's residence. This fact while supporting an inference that perhaps a small amount of cocaine for personal use was present and consumed three days later, is only one of other several inferences to be drawn and does not show that the affidavit was, *in toto,*

6

"plainly deficient." Given the criminal possession of cocaine in Garcia's residence, it is not unreasonable to presume that other types of illegal drugs or other drug users may be found on the premises a mere three days later. Supporting this conclusion is Detective Baker who, based on his twenty-two years of law enforcement experience, claimed in the affidavit that "the execution of a controlled substances search warrant often reveals the presence of persons other [than] the residents . . . helping with the sale of controlled substances, potential drug buyers, and drug users, and it is common to find controlled substances and drug paraphernalia on these persons." Detective Baker's uncontested contention is further reason to conclude that the affidavit was not "plainly deficient."

The magistrate relied substantially on *United States v. Owens*, 387 F.3d 607 (7th Cir. 2004) in support of his conclusion. In *Owens*, a search warrant was secured on the affidavit of an informant, whose reliability had not been established, who said that three months earlier he bought a quantity of crack cocaine (amount unknown) at the defendant's residence. The warrant was secured without probable cause and lacked any indicia of probable cause. *Id*. at 608.

The facts of the case at bar are substantially different. Here, the informant saw cocaine in Garcia's residence a mere three days earlier. Furthermore, Detective Baker's affidavit established the reliability of the confidential informant. Given the major distinctions between the circumstances of this case and those in *Owens*, the Court finds that Detective Baker acted in good faith when he obtained and executed the search warrant.

7

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Garcia's Motion to Suppress (Docket No. 8) is **DENIED**.

Dated at Milwaukee, Wisconsin this 14th day of March, 2007.

**BY THE COURT**


s/ Rudolph T. Randa
**Hon. Rudolph T. Randa
Chief Judge**